UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES R. HUNTER

      Plaintiff,

      v.

STERLING MORTGAGE AND
INVESTMENT COMPANY ET AL.

      Defendants.

_____/

Case No. 19-13814

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [9]**

On December 31, 2019, Plaintiff Charles Hunter filed this independent action in equity pursuant to Federal Rule of Civil Procedure 60(d). He seeks relief from a stipulated dismissal of a prior federal tax lien action in this Court, in which he was a named defendant. Defendants here, the United States of America Internal Revenue Service ("IRS" or "Government") and Sterling Mortgage and Investment Co. ("Sterling"), filed a Joint Motion to Dismiss [9] on June 5, 2020. Plaintiff filed a Response [10] on July 13, 2020. Defendants filed a Reply [11] on July 24, 2020. On January 28, 2021, the Court held a hearing on the Motion [9]. For the reasons explained below, Defendants' Motion to Dismiss [9] is **GRANTED**.

## FACTUAL BACKGROUND

On September 30, 1999, Plaintiff received a warranty deed for a residential property located at 1152 Lakeside Drive in Birmingham, Michigan ("Lakeside Property"). (Compl. ¶ 14). On October 21, 2004, Plaintiff executed a mortgage with Wells Fargo on the Lakeside Property. (*Id.* ¶ 15). From 2006 to 2011, Plaintiff failed to pay his federal taxes. (*Id.* ¶ 8-13). In 2013 and 2015, the IRS recorded multiple liens on the Lakeside Property for Plaintiff's unpaid federal taxes. (*Id.*).

Plaintiff also defaulted on his mortgage. (*Id.* ¶ 16). On April 11, 2017, Wells Fargo executed a non-judicial foreclosure sale on the Lakeside Property. (*Id.*). Wells Fargo attempted to notify the IRS via certified mail of the sale on March 16, 2017 but inadvertently sent the notification to the wrong address. (*Id.* ¶ 21-23).

At the foreclosure sale, Defendant Sterling purchased the Lakeside Property for $420,235.82. (*Id.* ¶ 17). However, because the IRS did not receive proper notice of the sale, the federal liens arising from Plaintiff's tax liabilities remained on the Lakeside Property after the sale to Defendant Sterling. (*Id.* ¶ 18).

On July 12, 2017, the Government brought an action in this Court against Sterling and Mr. Hunter to enforce its tax liens on the Lakeside Property. *United States v. Sterling Mortgage & Investment Co., et al.*, No. 2:17-cv-12281 (E.D. Mich. 2017) ("Sterling case"). At the time the Government filed the Sterling case,

Mr. Hunter's statutory right to redeem the Lakeside Property had not yet expired.

On September 15, 2017, the Government and Sterling settled the Sterling case and all parties stipulated to voluntary dismissal. (Compl. ¶ 32); Stipulation of Dismissal, *United States v. Sterling Mortgage & Investment Co., et al.*, No. 2:17-cv-12281 (E.D. Mich. 2017), ECF No. 15. According to the settlement agreement, Sterling agreed to sell the Lakeside Property and equally divide the net profits with the Government. (Compl. ¶ 33). Mr. Hunter, represented by counsel, neither participated in the settlement negotiations nor inquired as to the contents of the ultimate agreement. (*Id.* at ¶ 42).

Although the Property was worth approximately $737,000, Plaintiff estimates that the Government only received $158,382.09 from the sale and applied it to his outstanding tax debt. (*Id.* at ¶ 35). Plaintiff uses the following formula to determine this estimate: "**$737,000** [the value of the Lakeside Property] minus **$420,235.82** [the amount Sterling paid at the sheriff's sale] is **$316,764.18**. Dividing this sum equally between the Government and Sterling results in a net value to the Government of **$158,382.09** [excluding the costs of sale]." (*Id.*) (bold in original).

On October 11, 2017, Plaintiff's redemption period on the Lakeside Property expired. On October 16, 2017, Sterling filed an eviction against Plaintiff

in order to fulfill its agreement with the Government. (*Id.* at ¶ 36). On October 26, 2017, Plaintiff filed another action in this Court pursuant to federal property lien statute 28 U.S.C. § 2410(a)(1). *Hunter v. United States of America, et al*, No. 17-cv-13494 (E.D. Mich. 2017). There, Plaintiff asked the Court to enter a declaratory judgment requiring the Government to enforce its federal tax liens on the Lakeside Property over any interest of Defendant Sterling. Plaintiff claimed that the existence and terms of Defendants' settlement agreement was first disclosed to him in through motion papers in the case and confirmed during a hearing. (Compl. ¶ 38, 40). After the hearing, this Court granted Defendants' motion to dismiss the suit, because it lacked subject matter jurisdiction. *Hunter v. United States*, No. 17-13494, 2018 WL 2009559 (E.D. Mich. Apr. 30, 2018). It found that, because Plaintiff had no present legal interest in the Lakeside Property, he lacked standing to bring an action under § 2410(a)(1) and failed to establish a waiver of the Government's sovereign immunity. *Id.* at *1. Hunter appealed the dismissal. The Sixth Circuit affirmed it on April 30, 2019. *Hunter v. United States*, 769 F. App'x 329, 330 (6th Cir.), *cert. denied*, 140 S. Ct. 492, 205 L. Ed. 2d 319 (2019).

On December 31, 2019, Plaintiff filed this action against Defendants alleging an independent action in equity, under FRCP 60(d)(1), and fraud on the court, under FRCP 60(d)(3) in reference to the Government's original action, the

Sterling case. Plaintiff claims that he would not have agreed to the stipulated dismissal of the Government's case if he had known that the Government agreed to subordinate its tax liens to Sterling's sheriff's deed. (*Id.* ¶ 49). He claims that but for Defendants "secret side agreement," he would have been able to either redeem his property or file a counterclaim under § 2410(a), which allows the United States to be named in a suit over property it has a lien on. (*Id.* ¶ 51). Plaintiff also claims the Government "intentionally misled" him to believe that upon the dismissal of the original action, "the parties' interests would revert to the *status quo ante*, *i.e.*, that the federal tax liens would again take precedence over Sterling's later-recorded sheriff's deed." (*Id.* ¶ 62). He asks the Court to vacate the stipulated order of dismissal of the Sterling case, enforce the federal tax lien, and equitably toll his redemption period.

## LEGAL STANDARD

Defendants jointly move to dismiss for Plaintiff's failure to state his claims pursuant to Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the

plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ANALYSIS

### I.     Claim I: Independent Action in Equity

Plaintiff brings this suit as an "independent action in equity" pursuant to the relief from judgment Fed. R Civ. P. 60(d). It states that the rule "does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding." This is known as part of Rule 60's "savings clause." *Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011). It contains five elements:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Id.* (quoting *Barrett v. Sec'y of Health & Human Servs.,* 840 F.2d 1259, 1263 (6th Cir. 1987)). In addition, an independent action is "available only to prevent a grave miscarriage of justice," which is a "stringent" and "demanding" standard. *United States v. Beggerly,* 524 U.S. 38, 47 (1998); *Mitchell,* 651 F.3d at 595 (citing *Gottlieb*

*v. S.E.C.,* 310 Fed. Appx. 424, 425 (2d Cir. 2009); *Wise v. Kastner,* 340 Fed. Appx. 957, 959 (5th Cir. 2009)). "Resort to an independent action may be had only rarely, and then only under unusual and exceptional circumstances." 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, INDEPENDENT ACTION FOR RELIEF, FEDERAL PRACTICE & PROCEDURE § 2868 (3d ed.). Defendants argue that Plaintiff fails to show that elements one, two, and three should be weighed in his favor.

First, Defendants argue that relief under rule 60(d)(1) is not available to Plaintiff, because he was not subjected to a judgment, but rather stipulated to dismissal. Plaintiff correctly counters that courts have applied the independent action rule to stipulated dismissals and settlements. For example, in *Marcelli v. Walker,* the Sixth Circuit considered whether to reopen a district court case but ultimately decided that the plaintiff had not "presented good cause for the stipulated dismissal to be overturned." 313 F. App'x 839, 842 (6th Cir. 2009).

Similarly, in *Giasson Aerospace Sci., Inc. v. RCO Eng'g Inc.*, the Sixth Circuit, while considering whether to overturn a settlement, noted that judgments would be enforced unless doing so would be "manifestly unconscionable," 872 F.3d 336, 339 (6th Cir. 2017) (citing *Mitchell*, 651 F.3d at 599). It continued and stated that "[t]his is especially true for settlement agreements . . . [otherwise] the key virtue of settling cases—letting the parties move on after they each get some of what they

want—would be lost." *Id.* (quoting *Cummings*, 865 F.3d at 845). Ultimately, the court did not decline to overturn the settlement because the rule did not give this power but because it found plaintiff's "allegations of misrepresentation during settlement negotiations [were] of insufficient magnitude to meet the demanding "grave miscarriage of justice" standard. *Id.* at 341. This Court therefore has the power to vacate the stipulated dismissal in the original action. However, Plaintiff has failed to show that using this power is warranted here.

The second element of FRCP 60(d)(1) requires Plaintiff to present "a good defense to the alleged cause of action on which the judgment is founded." Plaintiff presents two defenses, however, both fall short. Plaintiff claims first that but for the stipulated dismissal, he could have filed a counterclaim against the Government under 28 U.S.C. § 2410(a). However, the stipulated dismissal did not prevent him from doing so. First, because the dismissal was "without prejudice." Order Granting Stipulation of Dismissal, *United States v. Sterling Mortgage & Investment Co., et al.*, No. 2:17-cv-12281 (E.D. Mich. 2017), ECF No. 16. And second, because Plaintiff, after dismissal and eviction proceedings against him began, filed a claim against the Government in this Court under that very same statute. In that case, Plaintiff sought quiet title to the Lakeside Property. However, this Court dismissed the suit, because Plaintiff lacked a legally cognizable interest in the property.

Therefore, vacating the stipulated dismissal to allow Plaintiff to once again bring a quiet title claim would be futile unless his redemption period was equitably tolled, which Plaintiff has not persuaded this Court to do.

Plaintiff also claims that the stipulated dismissal and Defendants' settlement agreement prevented him from redeeming his property. Although the original action was settled on September 18, 2017, Plaintiff had until October 11, 2017 to redeem his property and did not do so. If he had, Sterling and the Government could not and would not have executed their agreement to sell the property. In fact, in accordance with the agreement, Sterling waited until October 16, 2017 to file an eviction notice against Plaintiff in case he timely exercised his right to redemption. Even now, Plaintiff does not assert that he intends to redeem the property if the Court equitably tolled his redemption period. Similar to the plaintiff in *Marcelli v. Walker*, Plaintiff "had more than an adequate opportunity to be heard on his claims." 313 F. App'x at 842 (denying Rule 60(d) relief when plaintiff failed to meet the standards for an independent action). Therefore, he has failed to present good defenses to the original cause of action.

The third element of FRCP 60(d)(1) requires that a "fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense." Plaintiff alleges fraud. Fraud must be "plausibl[y] alleg[ed]." *Turner*

*v. Pleasant*, 663 F.3d 770, 777 (5th Cir. 2011), *as revised* (Dec. 16, 2011). Simple fraud is insufficient. *Id.* For example, in *Turner*, the court reversed a case's dismissal when it found that counsel "made deceptive statements that distorted the factual record." *Id.* at 776.

No such direct and serious allegations of fraud are alleged here. Instead, Plaintiff bases his fraud claim on erroneous assumptions. First, he assumed that the default rule for Rule 41(a)(1) dismissals stated that "the parties' interests revert to their pre-litigation status, *i.e.*, the federal tax liens would again take precedence over Sterling's later-recorded sheriff's deed." (Compl. ¶ 62). Even if such a default rule existed, this false assumption misunderstands the gravamen of the Government and Sterling's dispute: did the Government's lien remain on the property when notice of the foreclosure sale was sent to, but not received by, the Government? The ambiguity of the case law surrounding this question is what drove Defendants to settlement. Meaning that, but for the settlement agreement, the status quo ante was an unresolved dispute about who's claim to the property took precedence, not automatic seniority of the Government's lien. Additionally, a settlement agreement between the parties would no doubt supplant a default rule and instead impose the terms of the settlement agreement. Regardless, Defendants' failure to disclose the agreement to Plaintiff does not rise to the level of a plausible allegation of fraud.

Plaintiff also assumes that according to certain federal regulations, the Government is forbidden from entering an agreement that subordinates its tax liens on a property that was subject to a foreclosure sale that it did not have notice of. However, the Government correctly notes that the regulation in question, 26 C.F.R. § 301.7425-3(b)(1), "only governs the timing of when the IRS can provide an administrative consent pursuant to submission of a Form 14498," not when it can negotiate a dispute in federal court. (ECF No. 11, PageID.133). Therefore, Plaintiff has not shown any plausible allegation of fraud.

Lastly, Plaintiff's allegations do not meet the "grave miscarriage of justice standard." "Independent actions must . . . be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 244 (1944). "It is not a remedy for inadvertence or oversight by the losing party in the original action." 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, INDEPENDENT ACTION FOR RELIEF, FEDERAL PRACTICE & PROCEDURE § 2868 (3d ed.).

For example, in *United States v. Beggerly*, the U.S. Supreme Court found a "grave miscarriage of justice" when it was discovered that a judgment was based on a forged document. 524 U.S. 38, 46-47 (1998). This case does not rise to such a level

of severity. Instead, like the plaintiff in *Giasson Aerospace Sci., Inc. v. RCO Eng'g Inc.*, Plaintiff "seeks to circumvent Rule 60(b)'s one-year time limit and force renegotiation of [an] old settlement reached between sophisticated, represented parties, without any evidence of intentional misrepresentation." 872 F.3d at 341-42. Plaintiff's FRCP 60(d)(1) claim fails.

### II. Claim II: Fraud on the Court

Fed. R. Civ. P. 60(d)(3) authorizes a court to "set aside a judgment for fraud on the court." To succeed on his claim, Plaintiff "must establish that the deceit . . . actually subvert[ed] the judicial process by preventing the judicial machinery from performing in the usual manner to impartially adjudge the case presented." *Rodriguez v. Honigman Miller Schwartz & Cohn LLP*, 465 F. App'x 504, 508 (6th Cir. 2012) (internal citations and quotation marks omitted). "Fraud on the court is a fraud that affects the integrity of the court, is perpetrated by or affects officers of the court, or is an unconscionable plan designed to improperly influence the court, not just affect a party to the case. Examples would include bribery of a judge or forgery of key evidence." 5 URSULA UNGARO, FRAUD ON THE COURT, BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS § 55:44 (Robert L. Haig ed. 4th ed.). The elements of fraud upon the court consists of conduct:

    1. on the part of an officer of the court;

    2. that is directed to the "judicial machinery" itself;

    3. that is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth;

    4. that is a positive averment or is concealment when one is under a duty to disclose; and,

    5. that deceives the court.

*Demjanjuk v. Petrovsky*, 10 F. 3d 338, 348 (6th Cir. 1993).

Plaintiff's "fraud on the court" claim is without merit. First, he only presents conclusory allegations of misrepresentation and presents no evidence that Defendants carried out deliberate fraud that would entitle him to relief from judgment. Second, Plaintiff states that FRCP 41(a), the rule that allows a plaintiff to voluntary dismiss a case by stipulation without a court order, imposed a duty on the Government to disclose the settlement agreement to Plaintiff. Plaintiff points to no case law to suggest that such a duty exists. However, assuming it does, such a duty is irrelevant here. A fraud on the court claim requires just that — fraud directed towards the court, not another party. *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009). Therefore, Plaintiff has failed to plausibly allege this claim.

## Conclusion

The Court's power to grant relief from judgment under Fed. R. Civ. P. 60 (d)(1) & (3) is an extreme remedy that may only be used sparingly to remedy

egregious offenses of justice. Plaintiff has failed to allege that Defendants' settlement agreement and subsequent stipulated dismissal rose to the level of fraud or a grave miscarriage of justice that warrants such a remedy. The Court therefore dismisses Plaintiff's case for failing to state his claims upon which the requested relief can be granted.

**IT IS ORDERED** that Defendant's Motion to Dismiss [9] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice**.

**SO ORDERED**.

Dated: March 22, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge